**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **DENISE E.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **No. 18 C 8190** |
| | ) | |
| **ANDREW M. SAUL,** | ) | **Magistrate Judge Finnegan** |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER

Plaintiff Denise E. seeks to overturn the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and Plaintiff filed a motion for summary judgment arguing that the Commissioner's decision should be reversed or the case remanded. The Commissioner responded with a brief in support of affirming the decision. After careful review of the record and the parties' respective arguments, the Court agrees with Plaintiff that the case must be remanded for further proceedings.

## BACKGROUND

Plaintiff applied for DIB and SSI on July 2, 2015, alleging in both applications that she became disabled on April 9, 2010 due to fibromyalgia, carpal tunnel syndrome, and depression. (R. 189, 192, 241). She subsequently amended the alleged disability onset date to March 29, 2013. (R. 32). Born in 1969, Plaintiff was nearly 46 years old at the time of her applications, making her a younger person. (R. 189); 20 C.F.R. § 404.1563(c);

20 C.F.R. § 416.963(c). She completed two years of college and lives with her teenage son in an apartment located above her father's place. (R. 42, 242). Plaintiff spent seven years as a customer service representative for an insurance company before taking a position as an insurance claims processor in July 1997. She held that job until April 2010 when she was fired for poor attendance she attributes to her severe pain. (R. 35, 242). Though Plaintiff tried to do some babysitting work in 2012, it did not rise to the level of substantial gainful activity. (R. 16, 34, 242).

The Social Security Administration denied Plaintiff's applications initially on December 3, 2015, and again upon reconsideration on April 4, 2016. (R. 58-107). Plaintiff filed a timely request for a hearing and appeared before administrative law judge David Skidmore (the "ALJ") on August 23, 2017. (R. 29, 124). The ALJ heard testimony from Plaintiff, who was represented by counsel, and from vocational expert Thomas F. Dunleavy (the "VE"). (R. 29-57). On December 6, 2017, the ALJ found that Plaintiff's fibromyalgia, obesity, and lumbago are severe impairments, but that they do not meet or equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 16-18). After reviewing the evidence, the ALJ concluded that Plaintiff is not disabled because she retains the residual functional capacity ("RFC") to perform light work, which the VE testified would allow her to engage in her past relevant work as a claims clerk. (R. 19-21). The Appeals Council denied her request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by this Court under 42 U.S.C. §§ 405(g) and 1383(c)(3). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Whitney v. Astrue*, 889 F. Supp. 2d 1086, 1088 (N.D. Ill. 2012).

In support of her request for reversal or remand, Plaintiff argues that the ALJ: (1) erred in finding that she did not meet or equal any listed impairment at step 3 of the sequential analysis; (2) failed to consider all of her impairments in determining her RFC; (3) improperly evaluated her statements regarding the limiting effects of her symptoms; and (4) erred in weighing the opinion evidence of record.  For the reasons discussed below, this Court agrees with Plaintiff that the case must be remanded for further consideration of her statements regarding fibromyalgia pain and fatigue, and the opinion of her treating rheumatologist, Dennis J. Levinson, M.D.

## DISCUSSION

**A.    Standard of Review**

Judicial review of the Commissioner's final decision is authorized by the Social Security Act.  42 U.S.C. §§ 405(g), 1383(c)(3).  In reviewing this decision, the Court may not engage in its own analysis of whether Plaintiff is severely impaired as defined by the Social Security regulations.  *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).  Nor may it "'displace the ALJ's judgment by reconsidering facts or evidence or making credibility determinations.'"  *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010) (quoting *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)).  The Court "will reverse an ALJ's determination only when it is not supported by substantial evidence, meaning 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Pepper v. Colvin*, 712 F.3d 351, 361-62 (7th Cir. 2013) (quoting *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011)).

In making its determination, the Court must "look to whether the ALJ built an 'accurate and logical bridge' from the evidence to her conclusion that the claimant is not

disabled." *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). The ALJ need not, however, "'provide a complete written evaluation of every piece of testimony and evidence.'" *Pepper*, 712 F.3d at 362 (quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (internal citations and quotation marks omitted)). When the ALJ's decision "'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 698 (7th Cir. 2009) (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)).

## B.     Five-Step Inquiry

To recover DIB or SSI, a claimant must establish that she is disabled within the meaning of the Social Security Act.[1] *Shewmake v. Colvin*, No. 15 C 6734, 2016 WL 6948380, at *1 (N.D. Ill. Nov. 28, 2016). A claimant is disabled if she is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a). In determining whether a claimant suffers from a disability, an ALJ must conduct a standard five-step inquiry, which involves analyzing: "(1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment, whether he can perform his past relevant work; and (5) whether the claimant is capable of performing any work in the national economy." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th

---

[1]     Because the regulations governing DIB and SSI are substantially identical, for ease of reference, only the DIB regulations are cited herein.

Cir. 2012) (citing 20 C.F.R. § 404.1520).  If the claimant meets her burden of proof at steps one through four, the burden shifts to the Commissioner at step five.  *Moore v. Astrue*, 851 F. Supp. 2d 1131, 1139-40 (N.D. Ill. 2012).

**C.    Analysis**

**1.    Subjective Symptom Evaluation**

Plaintiff argues that the case must be reversed or remanded because the ALJ erred in rejecting her statements regarding the limiting effects of her fibromyalgia pain and fatigue.  The regulations describe a two-step process for evaluating a claimant's own description of her impairments.  First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain."  SSR 16-3p, at *2.  If there is such an impairment, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities."  *Id.*  In evaluating a claimant's symptoms, "an ALJ must consider several factors, including the claimant's daily activities, h[is] level of pain or symptoms, aggravating factors, medication, treatment, and limitations, . . . and justify the finding with specific reasons."  *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).  An ALJ's assessment of a claimant's subjective complaints will be reversed only if "patently wrong."  *Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010).

Plaintiff testified that her life "really centers around pain."  (R. 18, 35).  She has difficulty sleeping and feels drained by the throbbing and burning pain in her back, chest, arms, shoulders, and hips.  (R. 35-56).  Plaintiff estimates that she can walk about a block and a half before her hip and lower back start hurting, and just opening a can causes pain

to shoot up her arm.  (R. 37, 40).  She can stand for 5 to 7 minutes, sit for 30 minutes, and type for less than 5 minutes before experiencing pain.  (R. 40, 41).  The pain and fatigue cause problems with Plaintiff's concentration and memory and leave her unable to do household chores.  (R. 37, 43).  As a result, she relies on family to help her around the house, take her grocery shopping, and cook.  (R. 43-44).  Plaintiff testified that she struggles to get dressed in the morning and spends over half of each day lying in bed. (R. 44-45).

The ALJ discounted these complaints of severe pain and fatigue because Plaintiff's examinations were "unremarkable" and there were no "objective signs and findings" to support the stated limitations.  (R. 19).  This reasoning reflects a misunderstanding of fibromyalgia.   The Seventh Circuit has repeatedly cautioned that "[t]he extent of fibromyalgia pain cannot be measured with objective tests aside from a trigger-point assessment."  *Gerstner v. Berryhill*, 879 F.3d 257, 264 (7th Cir. 2018).  *See also Akin v. Berryhill*, 887 F.3d 314, 318 (7th Cir. 2018).  For this reason, "courts have been very clear that objective testing is not a reliable standard by which an ALJ can go about assessing the credibility of a claimant's fibromyalgia claims."  *Heuschmidt v. Colvin,* No. 14 C 4377, 2015 WL 7710368, at *5 (N.D. Ill. Nov. 30, 2015).  Instead, an ALJ must be mindful that the symptoms of fibromyalgia are "entirely subjective" and "[t]here are no laboratory tests for [its] presence or severity."   *Sandra R.W. v. Comm'r of Soc. Sec.*, No. 18 C 089, 2018 WL 5717202, at *5 (S.D. Ill. Nov. 1, 2018) (quoting *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996)); *Gebauer v. Saul*, 801 F. App'x 404, 409 (7th Cir. 2020) (fibromyalgia is "marked by subjective and fluctuating symptoms.").

The ALJ in this case seems to have ignored these directives. Aside from remarking generally about a lack of objective findings in the record, the ALJ did not specify which test results purportedly undermine Plaintiff's allegations. In discussing the medical record elsewhere in the decision, the ALJ noted that Plaintiff's neurological examinations were normal in March 2013 and March 2015. (R. 16). Yet the ALJ offered no explanation for any significance he may have attached to these findings, and no medical professional opined that there is a link between fibromyalgia symptoms and neurologic functioning. *See Brown v. Berryhill*, No. 2:18-CV-64-JEM, 2019 WL 499410, at *4 (N.D. Ind. Feb. 7, 2019) ("The ALJ has not explained how . . . results from neurological examinations are inconsistent with significant limitations due to fibromyalgia."). Similarly unhelpful is the ALJ's observation that Plaintiff tested negative for rheumatoid arthritis in April 2015 (R. 16), and that her laboratory results were "generally negative" in April 2016. (R. 17). Doctors frequently make a diagnosis of fibromyalgia in part by ruling out other autoimmune conditions, and as noted, the "common, but elusive and mysterious" disease is "frequently undetectable by laboratory tests." *Groskreutz v. Barnhart*, 108 F. App'x 412, 417 (7th Cir. 2004).

The only other reason the ALJ gave for rejecting Plaintiff's statements about the severity of her symptoms related to a November 15, 2015 consultative internal medicine exam she had with Dante Pimentel, M.D. As with previous exams, Plaintiff's neurological functioning was normal. (R. 17, 373). In addition, she was able to walk more than 50 feet unassisted with a "very stiff gait" and a "slight forward lean," and there were no signs of nerve root compression or peripheral neuropathy. (*Id.*). Once again, the ALJ failed to connect any of these findings to his conclusion that Plaintiff's fibromyalgia pain is not as

severe as she alleged. *Heuschmidt*, 2015 WL 7710368, at *5; *O'Brien v. Berryhill*, No. 17 C 272, 2017 WL 4921960, at *5 (N.D. Ill. Oct. 31, 2017) (remand necessary where "the ALJ did not explain how a finding of normal range of motion, normal gait, 5/5 motor strength, and a neurological examination within normal limits is inconsistent with the debilitating pain associated with fibromyalgia."). To the extent the ALJ expected to see greater limitations from Dr. Pimentel's exam, that is not in itself a sufficient basis for disbelieving Plaintiff's statements. *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014) (the ALJ should "rely on expert opinions instead of determining the significance of particular medical findings themselves.").

The Court recognizes that most claimants do not have such a severe case of fibromyalgia that they are totally disabled, and that may be true of Plaintiff as well. *Sarchet*, 78 F.3d at 307. Viewing the record as a whole, however, the ALJ did not provide a logical bridge between the evidence and his conclusion that Plaintiff's complaints about fibromyalgia pain and fatigue are not credible. The case must be remanded for further evaluation of this issue.

### 2. Dr. Levinson's Opinion

The ALJ's errors in evaluating Plaintiff's statements are compounded by the flawed decision to give little weight to the opinion from Plaintiff's treating rheumatologist Dr. Levinson. A treating source opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2); *see Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015); *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). If the opinion is contradicted by other evidence or is

internally inconsistent, the ALJ may discount it so long as she provides an adequate explanation for doing so. *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011); *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010); *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). That is to say, the ALJ must offer "good reasons" for discounting a treating physician's opinion, *Scott*, 647 F.3d at 739, and then determine what weight to give it considering (1) the length of the treatment relationship and frequency of examination, (2) the nature and extent of the treatment relationship, (3) the degree to which the opinion is supported by medical signs and laboratory findings, (4) the consistency of the opinion with the record as a whole, (5) whether the opinion was from a specialist, and (6) other factors brought to the attention of the ALJ. 20 C.F.R. § 404.1527(c)(2)-(6); *see Simila*, 573 F.3d at 515.

Dr. Levinson completed a Fibromyalgia Residual Functional Questionnaire on April 7, 2016 indicating that he had been treating Plaintiff since March 2015. (R. 408). Dr. Levinson identified several signs and symptoms of Plaintiff's fibromyalgia, including multiple tender points, nonrestorative sleep, severe fatigue, morning stiffness, depression, numbness, tingling, lack of endurance, impaired concentration, anxiety, frequent severe headaches, cognitive impairment, and balance dysfunction. (*Id.*). According to Dr. Levinson, Plaintiff experiences pain "all day every day" in her lumbosacral spine, cervical spine, chest, arms, hips, and legs, and is severely limited in her ability to handle workplace stress. (R 408-09). She would also need to lie down at unpredictable intervals during a work shift, would be absent more than 3 times a month, and cannot stand, bend, or engage in repetitive movements. Based on this assessment, Dr. Levinson concluded that Plaintiff "cannot work at all." (R. 409).

In assigning Dr. Levinson's opinion little weight, the ALJ first explained that the determination that Plaintiff cannot work "is a finding that she is disabled, which is reserved for the Commissioner." (R. 19). To be sure, "the ultimate question of whether a claimant is disabled to a degree to qualify for benefits is, indeed, a matter reserved to the Commissioner." *Larson v. Colvin*, 26 F. Supp. 3d 798, 808 (N.D. Ill. 2014). However, that is not alone a valid reason to afford a treating physician's opinion little weight. *See Moore v. Colvin*, 743 F.3d 1118, 1126-27 (7th Cir. 2014). The Court must therefore look to the ALJ's other reasons for discrediting Dr. Levinson's opinion, none of which is persuasive.

The ALJ stressed, for example, that Plaintiff's physical examinations were "unremarkable" and unspecified "signs and findings" did not support the stated limitations. (R. 20). As discussed previously, objective testing is not a reliable measure of the severity of fibromyalgia symptoms, so the absence of abnormal studies and clinical findings is not a sufficient reason to reject a treating physician's opinion. *Gebauer*, 801 F. App'x at 409; *Heuschmidt,* 2015 WL 7710368, at *5; *Lanzi-Bland v. Berryhill*, No. 16 C 8856, 2017 WL 4797529, at *4 (N.D. Ill. Oct. 24, 2017) (ALJ erred in affording less weight to treating rheumatologist's opinion concerning fibromyalgia based on negative and normal test results). Relatedly, it was improper for the ALJ to dismiss Dr. Levinson's opinion for being "based on [Plaintiff's] subjective complaints" (R. 20), given that fibromyalgia is almost "entirely subjective." *Sarchet*, 78 F.3d at 306; *Fowler v. Colvin*, No. 1:13-CV-1092-TWP-MJD, 2014 WL 4840582, at *4 (S.D. Ind. Sept. 29, 2014) (ALJ's decision to discount medical opinion concerning fibromyalgia because it was based primarily on the plaintiff's subjective complaints was improper).

10

The ALJ next indicated that Dr. Levinson's opinion deserved little weight because at an April 20, 2015 exam, he expressed "less concern about fibromyalgia syndrome at this time" and more concern about "an inflammatory myopathy." (R. 20, 320). In the ALJ's view, this was "strange" because "the entire weight of the evidence indicates fibromyalgia." (R. 20). The Court disagrees with the ALJ's assessment. At the April 20, 2015 visit, Dr. Levinson noted that Plaintiff's laboratory testing showed an elevated sedimentation rate of 78 mm, which he thought could signal inflammatory myopathy. He thus ordered additional blood tests. (R. 320). At the next appointment on May 28, 2015, Dr. Levinson reported that Plaintiff's sedimentation rate had returned to normal, making his primary assessment once again fibromyalgia. (R. 321). Since doctors frequently use blood tests to rule out other conditions in diagnosing fibromyalgia, there is nothing "strange" about Dr. Levinson considering the possibility that Plaintiff suffered from inflammatory myopathy before confirming that she has fibromyalgia. *Lanzi-Bland*, 2017 WL 4797529, at *4. This aspect of Dr. Levinson's assessment is thus not a reasonable basis for rejecting his opinion.

The ALJ's final reason for assigning little weight to Dr. Levinson's opinion was that he purportedly diagnosed impairments that were not shown in the record, such as chronic fatigue syndrome and irritable bowel syndrome. (R. 19-20). This is not an entirely fair characterization of the medical evidence. Plaintiff repeatedly complained of fatigue and difficulty sleeping, and she was diagnosed with insomnia as early as November 22, 2013. (R. 321, 322, 331, 333, 335, 337-39, 341, 380, 384, 400-01, 412, 414-15, 417-24). In addition, Dr. Levinson indicated on March 24, 2015 that Plaintiff complained of "functional bowel syndrome" (R. 322), and numerous treatment notes reference Plaintiff's problems

with acid reflux. (R. 331, 333, 418-20, 422-25). It is at least possible that Dr. Levinson considered these factors in checking the two questioned diagnoses on the form. The ALJ's failure to address this evidence creates a logical gap between the record and his decision to reject Dr. Levinson's medical opinion.

On the record presented, the ALJ did not articulate a valid reason for assigning Dr. Levinson's opinion only little weight. In such circumstances, the Court cannot say with confidence that the decision is supported by substantial evidence, and the case must be remanded. If the ALJ once again declines to give Dr. Levinson's opinion controlling weight, he must explain what weight the opinion merits considering all of the relevant factors, including Dr. Levinson's specialty in rheumatology. *See Sarchet,* 78 F.3d at 308 (fibromyalgia is a rheumatological disorder for which the relevant specialist is a rheumatologist); 20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to the opinions of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.").

### 2.   Remaining Arguments

The Court does not find any specific error with respect to Plaintiff's remaining arguments but the ALJ should take the opportunity on remand to reassess all of Plaintiff's diagnosed impairments and their limiting effects. In reweighing Dr. Levinson's opinion, the ALJ should also provide a more reasoned explanation for the weight assigned to the opinions of state agency reviewers. A conclusory statement that the opinion "appears well supported by the evidence of record" is not sufficient. (R. 20). Finally, the ALJ should consider all the medical and testimonial evidence of record in determining Plaintiff's RFC,

and consult with a VE as appropriate regarding the availability of jobs Plaintiff is capable of performing.

## **CONCLUSION**

For reasons stated above, Plaintiff's Motion for Summary Judgment [19] seeking to reverse the decision of the Commissioner of Social Security is granted. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and this case is remanded to the Social Security Administration for further proceedings consistent with this opinion.

ENTER:

Dated: May 20, 2020

SHEILA FINNEGAN
United States Magistrate Judge

13